IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IRIS D. TORRES-TRICOCHE,<br><br>         Plaintiff,<br><br>         v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>         Defendant. | CIVIL NO.:  09-1241 (MEL) |

## OPINION AND ORDER

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Iris D. Torres Tricoche ("plaintiff") was born in 1948. (Tr. 61.)  She attended four years of high school and two years of university, obtaining a degree certifying her as a radiology technician. (Tr. 169.)  She worked as a radiology technician for twenty-seven years, ending in July, 1999. (Tr. 170.)  She claims that she has been unable to work since June 30, 1999 due to pain in her lower back; cramps and pain in her right leg; cramps, numbness, and swelling in her hands; swelling in her right hand; high blood pressure; and an emotional condition.[1] (Tr. 61, 170-180.)

In July, 2005, plaintiff applied for a period of disability and disability insurance benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act, 42 U.S.C. §§ 416(I), 423 (2000). (Tr. 61-63.)  Plaintiff's application for Social Security benefits was denied initially as well as on reconsideration. (Tr. 37-39, 42-44.)   She timely filed a request for a hearing before an

---

[1]At her hearing before an Administrative Law Judge ("ALJ"), the ALJ suggested that plaintiff was "alleging that [she] cannot work since July 30, 1999." (Tr. 170.) However, on plaintiff's application for disability insurance benefits, plaintiff alleged that she became unable to work on June 30, 1999; that is the date considered by the ALJ and the Appeals Council for the purposes of determining disability. (Tr. 6, 26, 61, 166.)

Administrative Law Judge ("ALJ"), and on December 14, 2007, the ALJ determined that plaintiff "was not disabled as defined [i]n the Social Security Act." (Tr. 21, 26, 35.) Plaintiff requested review of the ALJ's decision by the Appeals Council. The Appeals Council granted review, and in a decision dated January 22, 2009, it adopted the ALJ's conclusion that plaintiff was not disabled. (Tr. 3-10.) As the final decision of the Commissioner of Social Security ("Commissioner"), the Appeals Council's decision is subject to federal court review. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000); Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622 (1st Cir. 1989) (per curiam); 20 C.F.R. §§ 404.955, 404.981, 422.210(a).

On March 11, 2009, plaintiff filed the complaint in this case pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, requesting review of the Commissioner's decision. (Docket No. 1.) The complaint alleges that the Commissioner's finding that plaintiff was not disabled was not based on substantial evidence.[2] (Docket No. 1 at 2.) The Commissioner answered the complaint, disputing that allegation. (Docket No. 10 at 2.) On May 29, 2009, the Commissioner filed his memorandum of law. (Docket No. 13.) Plaintiff filed her memorandum of law on July 20, 2009. (Docket No. 16.)

The question before the court is whether there is substantial evidence in the record to support the Commissioner's decision that plaintiff was not disabled within the meaning of the Social Security Act.

## II.     LEGAL ANALYSIS

### A.     Legal Standard

Section 205(g) of the Social Security Act provides, *inter alia*, that "[t]he court shall have the

---

[2]Plaintiff's memorandum of law recognizes that the decision of the Appeals Council is the final decision of the Commissioner, subject to judicial review. (Docket No. 16 at 2.) However, much of plaintiff's argument focuses on alleged errors in the ALJ's decision. (See, e.g., Docket No. 16 at 4, 15-16, 23, 25.) For the purposes of this opinion, the court construes all of plaintiff's articulated arguments as if they addressed the Appeals Council's decision.

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). "The resolution of conflicts in the

3

evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." López Vargas, 518 F. Supp. 2d at 335 (citing Richardson v. Perales, 402 U.S. at 399; Rodríguez, 647 F.2d at 222).  Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

Under the Social Security Act, a claimant of disability benefits bears the initial burden of proving that he or she is disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987); Reyes Robles v. Finch, 409 F.2d 84, 86 (1st Cir. 1969).  For purposes of the Social Security Act, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Furthermore, Section 223(d) of the Social Security Act provides, in its pertinent part, that:

> (2)(A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. . . .
>
> (3) . . . [A] "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. . . .

4

(5)(A) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. . . .

42 U.S.C. § 423.  In determining whether a claimant is disabled, all of the evidence in the record will be considered. 20 C.F.R. § 404.1520(a)(3).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. §404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Bowen v. Yuckert, 482 U.S. at 140-42.

Through step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b). If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he/she has performed in the past. If the claimant is able to perform his/her previous work, . . . he/she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d 279, 284 (D.P.R. 2008).

"The claimant has the burden, under steps one through four, of proving that he cannot return

5

to his former employment because of the alleged disability. Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform." Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam)).

**B.      The Appeals Council's findings**

On January 22, 2009, the Appeals Council issued a decision adopting the ALJ's conclusion that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 9; see Tr. 21, 24-26.)  After evaluating the evidence of record, the Appeals Council made the following findings:

1.   The claimant met the special earnings requirements of the Act on June 30, 1999, the date the claimant stated she became unable to work and met them through March 31, 2006.  The claimant has not engaged in substantial gainful activity since June 30, 2006 [sic].

2.   The claimant has the following severe impairment: a back impairment with degenerative disc disease, but she does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.   The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: light work with the ability to occasionally climb, stoop, crouch and crawl and frequently balance and kneel.

4.   The claimant's subjective complaints are not fully credible . . . .

5.   The limitations on the claimant's ability to perform work-related activities ... do not preclude the performance of her past relevant work as X-ray technician.  Therefore, the claimant's combination of impairments does not preclude the performance of past relevant work (20 CFR 404.1520(e)).

6.   The claimant is not disabled as defined in the Social Security Act at any time

through March 31, 2006, the date the claimant was last insured for Disability
Insurance Benefits.

(Tr.9.)

### C.      The medical evidence contained in the record

The certified administrative record contains the following medical evidence concerning
plaintiff's conditions:

(1) In 1993, Dr. Heriberto Pagán Saez, a radiologist, found that plaintiff had "large right
centrolateral disc herniation at L-5 S-1 level." (Tr. 86, 156.)

(2) On February 27, 1998, Dr. Ricardo Olazábal undertook an MRI of plaintiff's lumbo sacral
spine, finding "degenerative endplate changes" and a "large right paracentral HNP at the L5-S1 level
impinging on the right S1 nerve root." (Tr. 154.)

(3) On December 14, 2004, Dr. Fernando M. Zalduondo Dubner ("Dr. Zalduondo") reported
on a study of claimant's lumbar spine M.R.I. (Tr. 84-85, 155.)  Dr. Zalduondo found "a right
posterior soft L5-S1 soft disk herniation" and mild degenerative disk disease, a "small posterior L4-
L5 disk bulge" that "indents the ventral thecal sac without nerve root impingement or spinal
stenosis," and straightened lumbar curvature "without signs of lumbar compression fracture or
listhesis."  (Tr. 84.)  Dr. Zalduondo also noted microvascular ischemic changes and "mild right
worse than left mastoiditis." (Tr. 153.)

(4) Between December 3, 2004 and May 16, 2007, claimant underwent several examinations
by Dr. Juan Deniz ("Dr. Deniz"), a neurologist. (Tr. 74-75.)  On February 4, 2005, Dr. Deniz
diagnosed plaintiff with bilateral carpal tunnel syndrome and right L5-S1 chronic radiculopathy.  (Tr.
83.)  On June 27, 2005, Dr. Deniz again diagnosed plaintiff with bilateral carpal tunnel syndrome,

7

as well as chronic C4-5, C5-6 root lesions. (Tr. 82.)

Dr. Deniz completed a neurological medical report on August 15, 2005 in which he indicated that plaintiff had severe spasms, numbness in both hands, and dull pain in her lower extremities. (Tr. 141.)  Dr. Deniz found that plaintiff could not reach, push, or grasp in an effective manner; was not able to walk on heels or toes; and had diminished capacity to stand, walk, lift, carry, and sit.  (Tr. 142, 150.)  He also diagnosed plaintiff with panic attacks, major depression, microvascular ischemic changes, chronic radiculitis and radiculopathy, and degenerative disc disease. (Tr. 143-44.)

(5) On November 18, 2005, Dr. Glenn Garayalde Cotroneo ("Dr. Garayalde") conducted a neurological evaluation of Torres-Tricoche. (Tr. 120-129.) Plaintiff complained of a heavy sensation in her anal area, cramps in her legs and hands, tingling in her legs, and lower back pain shooting down her right leg. (Tr. 120.)  The examination revealed that she had "+2 in all deep tendon reflexes tested in both arms and both legs," "no pathological reflexes," and "mild trapezius and lumbar spasm, non-tender to palpitation." (Tr. 123.)  Dr. Garayalde noted that plaintiff was able to "sit, stand, tandem walk, walk on toes, walk on heels, climb on and off the examiner's table, [and] dress and undress herself without any difficulty." (Tr. 123.)  The radiographic examination showed "straightening of the normal lordosis related to paraspinal muscle spasm," "discogenic disease between L4-L5 and S1 level," "degenerative joint disease changes at the lower lumbar spine," and "mild paraspinal muscle spasm." (Tr. 124.)  Dr. Garayalde noted that plaintiff had no hand limitations and that she was "well-oriented in person, place, time and circumstance." (Tr. 125, 121.) Dr. Garayalde noted no "evidence of active radiculitis, radiculopathy, myelopathy or entrapment neuropathy." (Tr. 123.)

(6) Dr. Maria I. Hernández ("Dr. Hernández"), a State Agency medical advisor, completed

8

a residual functional capacity ("RFC") assessment on December 29, 2005, based on her review of plaintiff's medical record. (Tr. 110-118.)  Dr. Hernández concluded that Torres-Tricoche could occasionally climb, stoop, crouch, crawl, and lift up to twenty pounds; frequently balance, kneel, and lift up to 10 pounds; and stand, sit, or walk (with normal breaks) for up to six hours in an eight-hour workday. (Tr. 111-12.)  Dr. Hernández also reported that claimant had no manipulative limitation in her arms and hands. (Tr. 113.)

(7) Dr. Deniz completed a medical questionnaire on October 15, 2007.  (Tr. 74-81.)  Without noting a date of onset, Dr. Deniz stated: plaintiff gradually developed increased low back pain which causes her "great difficulty in laying down," along with "frequent legs cramping mainly to [right] side" (Tr. 74); plaintiff suffers from hand cramps and pain and numbness in the fingers (Tr. 74); plaintiff shows discogenic disease and disc herniation at L5-S1 and C3-4 levels (Tr. 81); plaintiff cannot walk on heels or toes because of low back pain and has antalgic gait (Tr. 77-78); plaintiff has anxiety, depression, and a frequently failing memory (Tr. 78); and plaintiff cannot perform typical productive daily activities, like shopping, or use her hands for repetitive gripping, handling or manipulation. (Tr. 79-80.)  According to Dr. Deniz, plaintiff could sit continuously for less than two hours; stand or walk continuously for less than one hour; occasionally stoop, climb and lift up to ten pounds; and never bend, squat, kneel, crawl, reach above shoulders, walk on an uneven surface, or lift more than ten pounds. (Tr. 79-80.)  Dr. Deniz diagnosed plaintiff with bilateral carpal tunnel syndrome and microvascular ischemia, among other diagnoses, and gave plaintiff a "very poor" prognosis "to engage in previous job tasks." (Tr. 81.)

(8) From November 7, 1996 until October 10, 2007, plaintiff periodically visited Dr. Iván S. Ayala ("Dr. Ayala"), a cardiologist. (Tr. 87.)  On August 24, 2005, he diagnosed plaintiff with

9

hypertension and hyperthyroidism, but he noted no significant restrictions "from a cardiovascular point of view." (Tr. 136.)  On October 16, 2007, Dr. Ayala repeated that diagnosis, adding that plaintiff could use her hands for repetitive gripping, handling, and manipulating and that she could occasionally lift up to twenty pounds but never more than twenty pounds. (Tr. 87, 93-96.)

(9) A list of medications plaintiff has taken includes Norflex, Paxil, Neurontin, Relafen, and Ambien, and Tylenol.  They were taken to help her sleep and to treat her pain, muscle spasm, and emotional condition. (Tr. 73, 175-76, 180, 185.)

### D.   Plaintiff's objection to the Commissioner's decision on the grounds that it is not supported by substantial evidence

The ALJ is required to complete a five-step sequential process in order to determine whether or not an individual qualifies to receive Social Security disability benefits. Sosa, 550 F. Supp. 2d at 284.  Where the Appeals Council accepts review of the ALJ's decision and issues its own decision, that decision becomes the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210(a). In cases where this determination is appealed, it is the court's role to examine the record and determine whether there is substantial medical evidence that supports the Appeals Council's decision. Rodríguez Pagán, 819 F.2d at 3; Dupuis, 869 F.2d 622; 42 U.S.C. § 405(g).

While it did not agree with all of the ALJ's findings, the Appeals Council agreed with the ALJ's substantive conclusions at each step of the sequential process, finding: (1) that the plaintiff had not engaged in substantial gainful activity since her alleged onset date, (2) that her back disorders constitute "severe impairments" (3) which do not meet or equal in severity an impairment in the Listing of Impairments, and (4) that her RFC to perform light work with the ability to occasionally climb, stoop, crouch and crawl and frequently balance and kneel made her capable of

performing past relevant work as a radiology technician. (Tr. 7, see Tr. 23-26.)

Plaintiff does not appear to challenge the Appeals Council's findings at steps one, two or three. (Docket No. 16.)  Plaintiff's argument focuses on the two parts of step four.  She argues that substantial evidence does not support the findings (1) that her RFC is the full range of light work with some postural limitations, or (2) that this RFC did not preclude her from performing her past work as a radiology technician. (Docket No. 16 at 3.)

**1.**    **The RFC finding of full range of light work with some postural limitations**

In addressing plaintiff's physical impairment, the Appeals Council found, among other things:

> The evidence of record shows that the claimant has lumbar discogenic disease at L4-5 and L5-S1 (HNP at L5-S1) with degenerative joint disease changes and mild spondylosis . . . . The record  . . . contains a residual functional capacity assessment that was prepared by State Agency medical consultant Dr. Maria I. Hernández, a neurologist . . . . Based on her review of the evidence of record, Dr. Hernández determined that the claimant retained the capacity for light work with some postural limitations. Specifically, she concluded that the claimant would be able to occasionally climb, stoop, crouch and crawl and frequently balance and kneel. The Council accords significant weight to Dr. Hernández's opinion because her determined limitations are consistent with the objective evidence contained in the record.

(Tr. 7.)  The Appeals Council discussed the findings of Dr. Deniz, Dr. Garayalde, and Dr. Ayala before adopting Dr. Hernández's opinion as to plaintiff's RFC with postural limitations.[3] (Tr. 6-9.)

Plaintiff argues that the Appeals Council erred in relying on the assessment of Dr. Hernández, a non-examining, non-testifying physician. (Docket No. 16 at 12-13; 24-25.)  Plaintiff asserts that

---

[3]The Appeals Council also found that plaintiff had no mental impairment during the period at issue. (Tr. 7.) Plaintiff does not challenge this finding, which is supported by substantial evidence, as there is no medical evidence dating from the period plaintiff was insured indicating a diagnosis of severe mental impairment. See Id.  Further, after her period of disability ended, plaintiff made inconsistent statements with regard to her mental condition: she told a state medical advisor "that she doesn't suffer any medical condition," but testified at her hearing that she suffers from anxiety, memory loss, hallucinations, and depression. (Tr. 73, 177-79.)

Dr. Hernández's assessment lacked a reasonable explanation of her conclusions or any consideration of plaintiff's own allegations regarding her symptoms and limitations, and that therefore it should be disregarded. Id.

Pursuant to guidance provided by Social Security Ruling (SSR) 96-5p, the Commissioner must consider the findings of state agency medical consultants as expert opinion evidence and address those opinions in the decision. SSR 96-5 at 6.  While reports by non-examining physicians lack "the assurance of reliability that comes from first-hand observation or . . . from first-hand testimony subject to claimant's cross-examination," an advisory report like the one submitted by Dr. Hernández "is entitled to evidentiary weight, which 'will vary with the circumstances, including the nature of the illness and the information provided the expert.'" Berríos López v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (per curiam) (quoting Brown v. Richardson, 468 F.2d 103 (1st Cir. 1972)) (internal citation omitted).  See also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); Rodríguez, 647 F.2d at 223.

In the instant case, the Appeals Council considered the assessment of Dr. Hernández in the context of medical evidence provided by treating physicians and adopted her conclusions in determining plaintiff's RFC. (Tr. 7-8.)  While Dr. Hernández's report does not contain lengthy expositions of her rationale, it does explain that the conclusions concerning plaintiff's exertional limitations are based on the facts that plaintiff has "strength 4/5, no atrophy, neg SLR, TF 80°, mild trapezius and L-S spasms, no tenderness, and adequate gait and hand function." (Tr. 111.) Moreover, Dr. Hernández explicitly considered plaintiff's allegations of pain and spasms in making a finding that the alleged symptoms were partially consistent with the medical evidence. (Tr. 115.)  The medical reports of Dr. Ayala, Dr. Garayalde, and Dr. Deniz were available to Dr. Hernández in

making her assessment. (Tr. 108-09.)  The Appeals Council properly found that Dr. Hernández's assessment accorded with the objective medical evidence. (Tr. 7.)  Thus, substantial evidence supported the Appeals Council's reliance on Dr. Hernández's report. See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (affirming the Commissioner's adoption of the findings of a non-testifying, non-examining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability); Berríos López, 951 F.2d 427.

Plaintiff also argues that Dr. Hernández's report should be suppressed as biased, because according to plaintiff Dr. Hernández discounted Dr. Deniz's reports without explanation. (Docket No. 16 at 12-13; 24-25.)  Dr. Hernández stated that Dr. Deniz's "ME is discrepant with rest of ME, his questionaires [sic] are usually stereotypied [sic] with same m. strength grading for his patients. Since discrepancies are significant [sic] his ME is considered not credible and no controlling weight was given to it." (Tr. 116.)  Dr. Hernández explained that the reason for discounting Dr. Deniz's report was its discrepancy with the rest of the record, a discrepancy properly noted by the Appeals Council as well. (Tr. 8.)  "The conflict between the personal physician and the medical advisor was for the [Commissioner] to resolve.  Since it was resolved against the claimant and since that conclusion has substantial support in the record the decision of the [Commissioner] should be affirmed." Tremblay, 676 F.2d at 12 (citing Richardson v. Perales, 402 U.S. 389).  See also SSR 96-6p ("[T]he opinion of a State agency medical . . . consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency medical . . . consultant's opinion is based on a review of a complete case record . . . .").

Finally, plaintiff argues that the Appeals Council's RFC finding is not supported by

substantial evidence because the "bare medical findings" on record are "unintelligible to a lay person in terms of residual functional capacity," and the Appeals Council was required to request the aid of a vocational expert to translate the medical findings into functional terms. (Docket No. 16 at 26.) Plaintiff's argument fails to note that many of the findings submitted by examining physicians are understandable to a layman.  For example, Dr. Ayala clearly states that plaintiff has no work restrictions from a cardiovascular point of view. (Tr. 95-96.)  The range of motion chart completed by Dr. Garayalde notes degrees of motion corresponding to understandable drawings of humans engaging in a particular motion. (Tr. 129.)  Moreover, to the extent the examiners' medical findings are unintelligible to a layman, the reports submitted by Dr. Hernández and Dr. Monica M. Esquilin, state medical advisors,  translated the medical evidence into terms applicable to a lay adjudicator's RFC determination. (Tr. 106, 111-112); see Berríos López, 951 F.2d at 431;  Berríos v. Sec'y of Health & Human Servs., 796 F.2d 574, 575-76 (1st Cir. 1986) (per curiam); Rosado v. Sec'y of Health & Human Servs., 807  F.2d 292, 293-94 (1st Cir. 1986) (per curiam).  Thus, the Appeals Council's RFC determination was supported by substantial evidence and is therefore conclusive.

**2.     The finding that plaintiff's RFC did not preclude her from performing past relevant work**

After examining the objective medical evidence in the record and considering the determinations of medical consultants, the Appeals Council found:

> The record shows that claimant has past relevant work as an X-ray technician, which is semi-skilled in nature and light in exertion. Based on the claimant's capacity for light work with her determined postural limitations, she was able to return [to] her past relevant work as an X-ray technician during the period at issue.

(Tr. 8.)

Plaintiff argues that the Appeals Council erred by not performing a function by function

14

comparison of plaintiff's RFC to plaintiff's past relevant work. (Docket No. 16 at 21.)  Such a comparison was not required.  SSR 82-62, cited by plaintiff, requires that a disability decision give a "clear picture of the case," following an orderly pattern that shows clearly how specific evidence leads to a conclusion.  In the instant case, the Appeals Council made a finding of fact as to plaintiff's RFC, pointed to "the record" to establish the general physical demands of plaintiff's past relevant work, and concluded that the physical demands did not exceed the RFC.  This explanation was clear and supported by substantial evidence.

While the Appeals Council did not identify the specific evidence it used to support its determination of the physical demands of plaintiff's past relevant work, evidence in the record supports its determination that such demands did not exceed plaintiff's RFC.  Social Security Administration information indicates that work as a radiology technician[4] requires light strength; occasional pushing, pulling, carrying, and lifting of 20 pounds[5]; frequent pushing, pulling, carrying, and lifting of up to 10 pounds; and no climbing, balancing, stooping, kneeling, crouching, or crawling. (Tr. 71.) It may also require "walking and or standing frequently even though weight is negligible," as well as "pushing and or pulling of arm and or leg controls." (Tr. 71.)  Plaintiff testified that her job required her to push stretchers and carts, lift "heavy" cassettes, and work mostly in a standing position, activities that she claimed she could not perform. (Tr. 169-173, 183-84.)  She

---

[4]The exhibit describes the requirements of the occupation entitled "radiologic technologist," "radiographer," or "X-Ray Technologist." (Tr. 72.) Plaintiff indicates that she has a degree as a "radiology technician." (Tr. 169.)  Plaintiff has not raised any objection to the use of the exhibit to show the demands of her past occupation.

[5] Plaintiff argues in her memorandum that her past relevant work "obviously" entailed lifting much more than twenty pounds, citing pages 181-185 of the transcript. (Docket 16 at 18.)  Such lifting requirements are not mentioned in the pages cited, nor elsewhere in the record.  Rather, when the ALJ inquired as to the weight of the cassettes plaintiff lifted in her previous work, she responded, "I would not know." (Tr. 170.)  Although plaintiff also stated that her work required her to assist patients in laying down or sitting, it was not unreasonable for the Appeals Council to conclude that such activity did not require plaintiff to lift more than twenty pounds. (See Tr. 182-83.)

also testified that she had to assist patients in laying down and sitting and that she was unable to do so. (Tr. 182-184;) See generally SSR 82-62 (indicating that adequate documentation of past work will be derived from "the claimant, employer, or other informed source[s]," including the Dictionary of Occupational Titles.)

Plaintiff's RFC, light work with postural limitations, allows her to perform these tasks. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Plaintiff is limited in her ability to climb, stoop, crouch and crawl, but those physical capabilities are not essential to work as a radiology technician. Thus, although the Appeals Council did not itself articulate a function by function comparison of plaintiff's RFC with the physical demands of her past work, its decision was sufficiently supported by evidence in the record, and its brief explanation was adequate to support its conclusion.[6]

Moreover, the Appeals Council was only required to measure the requirements of plaintiff's former work against her RFC to the extent that plaintiff raised an issue that her particular former work duties were precluded by her physical condition. Santiago, 944 F.2d at 6-7. The Appeals Council adequately addressed these issues by adopting the ALJ's conclusion that plaintiff's complaints were "credible to the extent they are consistent with [her] ability to perform light work

---

[6]Plaintiff argues that a vocational expert was required to compare plaintiff's RFC to her past relevant work. (Docket No. 16 at 24, 27.) Because medical advisors translated plaintiff's medical impairments into functional terms, the demands of plaintiff's past relevant work were clearly stated in the record, and the comparison was not complicated, no vocational expert was required to perform this task. See SSR 82-62; cf. Ramos v. Sec'y of Health & Human Servs., 514 F. Supp. 57, 65-66 (1st Cir. 1981) (in evaluating the Commissioner's comparison of plaintiff's RFC with jobs existing in the national economy, "the courts will usually affirm the [ALJ]'s conclusion even without a vocational expert's testimony" if "the matching of skills with the jobs mentioned by the [ALJ] is fairly obvious").

that was further reduced by postural limitations during the period of issue." (Tr. 8.)

Plaintiff also appears to argue that it was the Commissioner's burden to show that plaintiff could perform other work which exists in the national economy. (Docket No. 23-24, 27-28.)  This argument is misplaced.  Only if plaintiff has proven that she cannot perform past relevant work does the Commissioner bear the burden to prove that a claimant can perform other work in the national economy. Ramos v.  Sec'y of Health & Human Servs., 514 F. Supp. 57 (D.P.R. 1981); Berríos Vélez, 402 F. Supp. 2d at 390 (citing Santiago, 944 F.2d at 5; Ortiz, 890 F.2d at 524). In the instant case, the Commissioner's decision that plaintiff could perform past relevant work was supported by substantial evidence in the record.[7]

## III.    CONCLUSION

For the reasons explained above, it is hereby concluded that the decision of the Commissioner as reviewed by the Appeals Council is supported by substantial evidence in the record.  Therefore, the Appeals Council's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of February, 2010.

s/Marcos E. López
U.S. MAGISTRATE JUDGE

---

[7]Plaintiff also suggests that a vocational expert was required to compare plaintiff's RFC to other work in the national economy. (Docket No. 23-24, 27-28.)  Because the Appeals Council properly found that plaintiff could perform past relevant work, no comparison of her RFC to other work in the national economy was necessary.